## G. AMSINCK & CO. v. SPRINGFIELD GROCER CO.

(District Court, S. D. Missouri, W. D.   May 28, 1924.)

No. 375.

1. **Sales** ⊜⇒72(1)—"**Granulated sugar.**"

"Granulated sugar" has a definite trade meaning in this country, and imports a refined sugar, with the resulting standard of whiteness, purity, and dryness. Unrefined sugar is not "granulated sugar."

2. **Sales** ⊜⇒72(1)—**Tender of Java sugar as granulated sugar held not compliance with contract.**

Plaintiff contracted to sell and defendant to buy a quantity of "Java white granulated sugar." Java sugar was a commodity then practically unknown to the trade and public of the United States. It is not refined, and is not a granulated sugar within the American trade meaning of the term, a fact which was not known to defendant. *Held*, that a tender of Java sugar, which is inferior in quality and whiteness to standard granulated sugar, was not a compliance with the contract, and defendant was not bound to accept it.

At Law. Action by G. Amsinck & Co. against the Springfield Grocer Company. On final hearing on reopening of case. Judgment for defendant.

G. M. Sebree, of Springfield, Mo., Joseph B. Fradenberg, of Omaha, Neb., P. H. Kunzig, of New York City, and Joseph D. Redding, of San Francisco, Cal., for plaintiff.

Barbour & McDavid, of Springfield, Mo., and William Ritchie, Jr., of Omaha, Neb., for defendant.

VAN VALKENBURGH, District Judge. This case was argued and submitted at a previous term. The findings made were in favor of the plaintiff, and a memorandum opinion filed, setting forth the views of the court. Before entry of judgment the defendant filed an application to reopen the case upon the ground of newly discovered evidence materially affecting the right of the plaintiff to recover. This application was treated in the nature of a motion for new trial, and was addressed to the sound discretion of the court, in view of the disclosures made and verified.

The original hearing was confined to the single issue of whether a binding contract of sale had been made and remained unimpaired. All other facts and circumstances incidental to the right of recovery were presumed by counsel on both sides. In the motion for rehearing it was shown that defendant had for the first time learned that the commodity offered, delivered, and sold for the account of defendant was not the article which defendant had contracted to buy, and that, in fact, such article had no existence and was beyond the power of plaintiff to deliver.

It was asserted, and is now conceded, that prior to a few months in the spring and summer of 1920 Java sugar was a commodity practically unknown to dealers and to the public in the United States. Only experts in the sugar business were aware of its essential character and the process of its manufacture. The application alleged that

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the contract between plaintiff and defendant provided for the sale of Java white granulated sugar; that no granulated sugar was or is produced in Java; that the sugar purporting to be delivered and sold for the account of defendant was not a granulated sugar, but was a washed sugar of inferior grade, and that this was well known to the plaintiff; that defendant, a jobber of groceries, including sugar, selling its goods to merchants generally in this territory, was entirely unfamiliar with the nature of Java sugar, and relied upon the term "granulated," employed in the contract, which imported a technical and well-understood quality in the trade, and acquired no knowledge of the true facts until after this case was submitted, and then only by accident, through the channel of other litigation arising out of similar transactions. Under the showing made the court deemed it proper to grant the rehearing prayed.

[1] It is established beyond question, to my mind, that the term "granulated sugar" has a definite and well-established meaning to the trade in the territory in which this transaction took place. Not only in Missouri, but throughout the Middle West, in the East, and even on the Pacific Coast, the word "granulated," as applied to sugar, is so well understood that, unless qualified, it imports a specific commodity, and that is "refined pure white sugar, free from molasses and foreign substances, dry and free running." It is so quoted in trade journals; the only necessary qualification being whether it is characterized as standard, or of a greater or lessor degree of fineness in grain. The essential characteristic is that it must be refined and of the resulting standard of whiteness, purity, and dryness. Confusion has arisen from the origin of the term, which is derived originally from the Latin "granulum," a small grain. Naturally the dictionaries give the abstract definition suggested by derivation. Consequently the popular notion is that the presence of grains in the sugar is what stamps it as granulated; but in the manufacture of the article, and in the trade, certainly in the American market, the word "granulated" has acquired a secondary meaning, which prevails in trade transactions, and, as well said by counsel in argument, stamps the character of the sugar as definitely as the word "sterling" stamps the quality of silver. Encyclopædias and technical works, in discussing sugar, use "granulated" and "refined" interchangeably and as synonymous. Incidentally, an apparatus used in the process of manufacture is called a "granulator"; but it is conceded that this is a misnomer. The apparatus thus named is merely a drier, and has no part in reducing the sugar content to granules or grains. These grains are crystals which are formed during the process of evaporation and condensation.

Granulated sugar is produced in various foreign countries, as well as in the United States, and, when so sold, the word "granulated" is accompanied by the name of the country in which it is produced; but, if the word "granulated" is used, the sugar must be refined sugar. In Louisiana, in this country, there is the single exception that sugar treated upon the plantations is called granulated. It is not a refined sugar, and the word "plantation" must be used when it is offered for sale. With that word absent from the contract, a delivery of planta-

tion granulated for refined granulated would not be a good delivery. Upon this substantially all the witnesses agree, including the representatives of Meinrath Brokerage Company. Furthermore, such sugar is usually sold by sample, because, from the fact that it is not refined, its grade cannot be relied upon through description merely.

[2] Java sugar is admittedly not a refined sugar. It is white only in a comparative sense. Its quality, as disclosed by the testimony, as well as by samples produced, would not find favor with the consuming public in the territory in which the defendant company does business. It would not be merchantable for the comprehensive purposes for which it would be sold, and it could not be disposed of in this market, except at a great sacrifice, and then only for special purposes. This alone would not necessarily avoid the contract of purchase, if the article conformed to the terms of the contract; but the inferiority of this sugar is due to this very important fact that it is not granulated or refined sugar, and therefore does not conform to the contract description.

It was suggested in argument that defendant should have been placed upon its guard, because the sugar was described as Java granulated sugar. This would be true if the sugar were really granulated in the trade sense, although the Java article might be inferior to that produced in this country; but defendant was aware of the production of granulated sugar in various foreign countries. English granulated, Dutch granulated, German granulated, French granulated, Hong Kong granulated, and various other brands, have long been familiar to the trade. The terms used merely designate the country in which the sugar is produced, but in all cases such sugar is known to be refined sugar, and that is all with which the defendant was concerned. It was willing to take the risk of its quality within such narrow limits. It was not, however, required to receive as granulated that which was not refined sugar.

It is significant that Java white sugar is known in Java and to sugar experts as Java white or Java superior. It is not known to the trade as granulated, and, if ever so referred to in Java, it is only in a loose sense; just as in Louisiana local producers refer to the plantation sugar as granulated, but do not attempt to sell it, except as plantation sugar. The plaintiff in this case received this sugar as "superior." It was shipped as "superior." It was so characterized by the collector of customs. It was so accepted and released by plaintiff. Not until it came to be sold by the plaintiff was it called "granulated," and I cannot escape the conclusion that it was so characterized because of the meaning that term would convey to the jobbers in this country to whom it was to be sold. If it had not been represented as "granulated" or "refined" sugar, it is obvious from the testimony that the defendant would not have considered the purchase without further investigation, because it knew that it could not dispose of it to the American consumer.

It is unnecessary to enter into a more extended discussion of the testimony. Such conflicts as appear are easily explained, but the overwhelming weight leads unavoidably to the conclusion I have reached

that the commodity furnished was not the commodity named in the contract as understood in the trade. Judge Sawtelle, in the District Court for the Southern Division of the Northern District of California, in the case of John F. Lalla Co. v. E. L. Mosely (no opinion filed) a very similar case, has arrived at the same conclusion.

It follows that the plaintiff has failed to establish such compliance with the contract upon which it sues as entitles it to recover, and judgment must go in favor of the defendant, with costs.